MAYOR AND CITY COUNCIL OF BALTIMORE
*v.* ANTHONY ROSE ET AL.

[No. 474, September Term, 1980.]

*Decided January 7, 1981.*

The cause was argued before THOMPSON, LOWE and WEANT, JJ.

*William Hughes, Associate City Solicitor for Baltimore City, with whom were Benjamin L. Brown, City Solicitor for Baltimore City, and William R. Phelan, Jr., Assistant City Solicitor for Baltimore City,* on the brief, for appellant.

*Robert K. Nead* for appellee State Farm Mutual Automobile Insurance Company. *Phillip M. Sutley* for appellee Anthony Rose.

THOMPSON, J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore (the City), the appellant, appeals from a judgment, entered in the Superior Court of Baltimore City, declaring the City liable to two of the appellees, Anthony and Rebecca Rose, for uninsured motorist benefits and declaring State Farm Mutual Automobile Insurance Co. (State Farm), also an appellee, not liable to the Roses for such benefits.

The case was presented to Judge Martin B. Greenfeld upon stipulations of facts. On December 9, 1975, Mr. Rose, a Baltimore City firefighter, was seriously injured when a vehicle operated by Peter Young Wilkes collided with the fire truck upon which Rose was riding. The sole cause of the collision was the negligence of Wilkes; at the time of the accident neither Wilkes nor the vehicle which he was operating carried liability insurance.[1] At the time of the accident, Rose had a liability insurance policy covering his personal vehicle with State Farm. As required by Maryland law, this policy included coverage for losses caused by an uninsured motorist. On September 22, 1978, the Roses filed an action for declaratory judgment against State Farm in the Superior Court of Baltimore City. The Roses sought a

---

1. The vehicle was owned by Samuel Robert Wilkes of Columbus, Ohio. At the time, Ohio had no mandatory minimum auto insurance coverage law.

declaration that they were entitled to receive benefits, under the uninsured motorist provision of their policy with State Farm, for the injuries suffered by Rose in the collision. On September 25, 1979, State Farm filed a third party complaint aginst the City, claiming that the City, which is self-insured, was primarily liable inasmuch as Rose had been a passenger on the City's truck at the time he was injured. Judge Greenfeld agreed with State Farm's contention and declared that the City was primarily liable to the Roses for $20,000 in benefits, which is the minimum uninsured motorist coverage permitted under the statute. The parties had stipulated that Rose's injuries exceeded $20,000; previously Rose had filed for and had been awarded special disability retirement benefits from the City in the amount of $9,429.46 per annum.[2]

I

At the time of the accident, Md. Ann. Code, Art. 57, § 18 provided as follows:

"(a) No action shall be maintained and no claims shall be allowed against any municipal corporation or against any county or Baltimore City for unliquidated damages for any injury or damage to person or property unless within 180 days after the injury or damage was sustained, written notice setting forth the time, place or cause of the alleged damage, loss, injury or death shall be presented either in person or by registered mail by the claimant, his agent or attorney, or in the case of death, by his executor or administrator, to the county commissioners, county council, the corporate authorities of the municipal corporation or the city solicitor of Baltimore City, as the case may be. In Montgomery County and Howard

---

2. Rose elected not to receive workmen's compensation benefits; rather he accepted benefits payable from the Fire and Police Retirement System of the City of Baltimore. See, Baltimore City Code, Art. 22, § 29 et seq.

County, written notice shall be presented to the county executive.

(b) Notwithstanding the provisions of (a) above, the court may, upon motion and for good cause shown, entertain the suit even though the required notice was not given, unless provided further the defendant can affirmatively show that its defense has been prejudiced thereby." [3]

The City contends that, because neither the Roses, who did not file an action against the City, nor State Farm, which was not sued by the Roses until nearly three years after the accident, gave the notice called for by the statute, it cannot be held liable. We do not agree. At the time of the collision, the City had elected to become self-insured, as permitted by Md. Transp. Code Ann. § 17-103, which provides in pertinent part:

"(a) Required form. — (1) Except as provided in paragraph (2) of this subsection, the form of security required under this subtitle is a vehicle liability insurance policy written by an insurer authorized to write these policies in this State.

(2) The Administration may accept another form of security in place of a vehicle liability insurance policy if it finds that the other form of security adequately provides the benefits required by subsection (b) of this section.

(b) Required minimum benefits — The security required under this subtitle shall provide for at least:

* * *

(4) The benefits required under Article 48A, § 541 of the Code as to required additional coverage."

---

3. This section is now found in Md. Cts. & Jud. Proc. Code Ann, § 5-306 (1980).

Md. Ann. Code, Art. 48A, § 541 (c) provides as follows:

"(c) Uninsured motorist coverage. — In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article, for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle. The coverage required under this subsection (c) shall be in such form and subject to such conditions as may be approved by the Commissioner of Insurance. Any provision in any policy of motor vehicle liability insurance issued after July 1, 1975, with respect to the coverage provided for damages sustained by the insured as a result of the operation of an uninsured motor vehicle, which commands or requires the submission of any dispute between the insured and the insurer to binding arbitration, is prohibited and shall be of no legal force or effect. In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A §§ 243H and 243-I. The coverage required under this subsection shall be primary to any right to recover from the Maryland Automobile Insurance Fund pursuant to § 243H of this article."

Under the statute set forth above, the City, having elected to act as its own insurer, was required to assume the same responsibilities and provide the same minimum coverage as a private carrier. There is nothing in the statute which permits self-insured municipal corporations to impose additional conditions upon or to further limit the extent of the coverage which they provide. To allow the City to avoid liability because notice was not given would be to permit the City to provide insurance coverage which is not the

equivalent of that which the statute requires a commercial carrier to provide.

Our decision is supported by *Cotham and Maldonado v. Board,* 260 Md. 556, 273 A.2d 115 (1971), where the Court recognized the impracticality of applying the notice requirement to facts similar to these. There, as in the case at bar, the claim made against the governmental unit was a third party claim; there also, as in the case at bar, the defendant and third party plaintiff was not himself sued until the time to give notice had expired. The Court stated:

> "The claim of Dr. Maldonado is, therefore, an inchoate claim which does not ripen into being unless and until he pays Cotham. To hold that a person in his position is barred under this notice statute from recovery against the municipal corporation would be to place in the hands of the plaintiff a determination of whether the Defendant might be permitted to recover from the municipal corporation, because by manipulation of the time of filing suit and the speed with which the plaintiff then proceeded, the plaintiff could easily place the potential third-party plaintiff outside the statutory period. He has no knowledge of a claim until suit is filed. . . ." *Id.* at 566-67.

## II

As we noted above, because Rose's injuries were disabling, he applied for and was awarded special disability retirement benefits from the City in the amount of $9,429.46 per year. The City contends that, because Rose is receiving retirement benefits from the City, he is barred from also recovering uninsured motorist benefits from the City. It claims support for this argument in Md. Ann. Code, Art. 48A, § 243-I (b) (5) and in our opinion in *Nooe v. City of Baltimore,* 28 Md. App. 348, 345 A.2d 134 (1975), *cert. denied,* 276 Md. 748 (1976).

The authority which the City cites offers no support for its contentions. Section 243-I (b) (5) permits the deduction from

uninsured motorist benefits of "[a]ll amounts that the applicant has received, or . . . is likely to receive, by reason of the accident out of which applicant's claim arises, under or because of *any workmen's compensation law.*" (emphasis added). In *Nooe,* we considered the workmen's compensation statute, specifically Md. Ann. Code, Art. 101, § 33, and determined that the explicit language of that statute barred recovery of workmen's compensation benefits by an employee who had received a pension which afforded benefits greater than those available through workmen's compensation. *Id.* at 356. *See* also, *Frank v. Baltimore County,* 284 Md. 655, 399 A.2d 250 (1979). Neither Section 243-I (b) (5) nor our opinion in *Nooe* has any applicability in the present situation, where the benefits received are paid by the Fire and Police Employees Retirement System of Baltimore City and not by workmen's compensation, and where the benefits sought are payable under the uninsured motorist coverage which the City is required to provide. Had the legislature wished to permit the deduction from uninsured motorist benefits of payments made by the Retirement System, we believe that it would have done so. *Cf.,* Md. Ann. Code, Art. 48A, § 243-I (d) ("[n]otwithstanding the provisions of any workmen's compensation *or similar law . . .* pursuant to any workmen's compensation *or similar law. . . .*") (emphasis added).

Where the statutory language is clear, we are required to follow it. As the Court of Appeals stated in the case of *Pennsylvania National Mutual Casualty Insurance Co. v. Gartelman,* 288 Md. 151, 416 A.2d 734 (1980):

> "An additional rule of statutory construction applicable here is that in ascertaining and effectuating the actual intent of the Legislature, a court must read the language of the statute in context and in relation to all of its provisions. Where statutory language is plain and unambiguous, and expresses a definite meaning consonant with the statute's purpose, courts must not insert or delete words to make a statute express an intention different from its clear meaning.

> *Department of State Planning,* 288 Md. at 15, 415 A.2d at 299. Moreover, Maryland's uninsured motorist statute is remedial in nature and should be liberally construed in order to promote its purpose of recovery for innocent victims of motor vehicle accidents. *State Farm,* 277 Md. at 605, 356 A.2d at 562." *Id.* at 159.

The language in the statute we here construe limits the deduction to amounts paid under a workmen's compensation law. There is no provision for a deduction under a similar law; therefore the City's argument is rejected.

*Judgment affirmed.*
*Appellant to pay the costs.*